# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN DIVISION

| | |
|---|---|
| FREDERICK KLEIN, RONALD RYAN, GEOFFREY GRANT, and TASHINA DRAKEFORD individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br><br>TD BANK, N.A.,<br><br><br>      Defendant. | CASE NO.:<br><br>**CLASS ACTION**<br><br>**CIVIL COMPLAINT FOR DAMAGES:**<br><br>  (1)  **Breach of Contract;**<br>  (2)  **Violation of New Jersey's Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq.*)**<br>  (3)  **Breach of the Duty of Good-Faith and Fair Dealing**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs, Frederick Klein, Ronald Ryan, Geoffrey Grant and Tashina Drakeford (collectively the "Plaintiffs"), by their attorneys, hereby bring this class and representative action through this Complaint against TD Bank, N.A., ("TD Bank" or "Defendant").  All allegations in this Complaint are based upon information and belief except those allegations which pertain to Plaintiffs or their counsel, which are based on personal knowledge.  Plaintiffs' information and belief are based upon, *inter alia*, Plaintiffs' own investigations and the investigations conducted by Plaintiffs' attorneys.  Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## IDENTIFICATION OF PARTIES (LOCAL RULE 10.1)

1.      The names and addresses of the named parties to this action are as follows:  (i)

Plaintiff Frederick Klein, Marlton, New Jersey; (ii) Plaintiff Ronald Ryan, Boca Raton, Florida;

(iii) Plaintiff Geoffrey Grant, Wilmington, North Carolina;  (v) Plaintiff Tashina Drakeford,

Bronx, New York (v) Defendant TD Bank, N.A., 1701 Route 70 East, Cherry Hill, New Jersey.

## INTRODUCTION

2.      This is a class and representative action brought by Plaintiffs to assert claims

individually and in their capacity as the class representatives of all others similarly situated.  This

class action seeks monetary damages against Defendant TD Bank arising from TD Bank's

uniform practice of assessing and collecting overdraft fees for transactions[1] when the account

was not overdrawn, as there was money in the account to cover the transaction which is a breach

of its express contracts with consumers.  Instead of using the actual balance (money in the

account) for determining if the account is overdrawn as it is obligated to do under its contracts

with its customers, TD Bank utilizes an artificial and anticipation balance (referred to as the

"available balance") to determine whether it is going to assess an overdraft fee.  Available

---

[1] Unless a specific type of transaction is indicated, "transaction" refers to the posting to a customer account of an "item", as defined by TD Bank's customer account agreement as including:

> a check, substitute check, purported substitute check, remotely created check or draft, electronic transaction, draft, demand draft, image replacement document, indemnified copy, ATM withdrawal or transfer, debit card point-of-sale transaction, pre-authorized debit card payment, automatic transfer, telephone-initiated transfer, ACH transaction, online banking transfer to accounts at TD Bank or external transfers to other institutions, online bill payment instruction, payment to other people (Popmoney® transaction), withdrawal slip, inperson transfer or withdrawal, cash ticket, deposit adjustment, wire transfer, and any other instruction or order for the payment, transfer or withdrawal of funds.

(2011 Personal Deposit Account Agreement, p.13).

balance is the actual balance minus potential future transactions that may – or may not – come in for posting at some later date (pending authorizations).

3.      This practice of assessing overdraft fees on transactions when there is money in the account to cover the transaction is a breach of two of TD Bank's contracts with customers. First, it is a breach of the "Opt-in" contract between TD Bank and the customer, which is the contract that provides TD Bank the authorization to assess an overdraft fee on non-recurring debit card or ATM transactions.  The Opt-in agreement specifically states that "an overdraft occurs when you do not have enough *money* available in your account to cover a transaction." (TD Debit Card Advance Agreement, Ex. 1 (emphasis added)).  Second, it is a breach of  the Personal Deposit Account Agreement ("PDAA"), which states "Overdraft" is an "advance of funds" and results in fees that "may be assessed on items presented for payment that bring your Account into a negative balance," (2011 Personal Deposit Account Agreement, Ex. 2, p. 12.). The PDAA also states that "overdraft fees are not charged on "pending" authorizations. (2011 PDAA, Ex. 2, p. 13.)  In light of the terms of the Opt-in agreement and PDAA, TD Bank is not permitted to charge overdraft fees when there is enough money in the account to cover the transactions, and thus, does not require an advance of funds from the bank.

4.      Accordingly, Plaintiffs seek to represent a nationwide class of all TD Bank customers who were improperly assessed overdraft fees from August 15, 2010 to the present in express breach of these contract provisions with its customers.

5.      This action does not challenge TD Bank's practices or disclosures except as to when they are in conflict with the promises and conditions expressly stated by TD Bank in their contracts with customers.  Specifically, this action does not challenge TD Bank's practices of authorizing transactions in overdraft, the posting order of the transactions, the right to calculate

or charge overdraft fees, the right to set the amount of overdraft fees, or what disclosure language it should or must use in its contracts with customers.  This action also does not challenge the right of TD Bank to determine when or under what circumstances an account is overdrawn, except as it relates to a practice of assessing a fee under circumstances that are in conflict with and in breach of the terms of the contracts which TD Bank drafted and presented, without negotiation, to its customers.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because:  (i) there are 100 or more class members;  (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs;  and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant resides and is headquartered in this district, regularly transacts substantial business in this district, and because a substantial part of the events or omission giving rise to the claims asserted herein occurred and continue to occur in this district.

## THE PARTIES

A.            **Plaintiffs**

8.     Plaintiff Frederick Klein is a resident of the city of Marlton New Jersey, and at all times relevant herein maintained his account at a TD Bank branch located in New Jersey. Plaintiff Klein has been injured as a result of TD Bank's conduct alleged herein.

9.      Plaintiff Ronald Ryan is a resident of the city of Boca Raton, Florida, and at all times relevant herein maintained his account at a TD Bank branch located in Florida. Plaintiff Ryan has been injured as a result of TD Bank's conduct alleged herein.

10.     Plaintiff Geoffrey Grant is a resident of the city of Wilmington, North Carolina, and at all times relevant herein maintained his account at a TD Bank branch located in North Carolina.  Plaintiff Grant has been injured as a result of TD Bank's conduct alleged herein.

11.     Plaintiff Tashina Drakeford is a resident of Bronx, New York, and at all times relevant herein maintained her account at a TD Bank branch located in New York.

**B.**            **Defendant**

12.     Defendant TD Bank, N.A., is a national bank chartered and supervised by the federal Office of the Comptroller of Currency and is headquartered in Cherry Hill, New Jersey. TD Bank conducts substantial business with approximately 1,300 branches and 1,900 ATM machines in the eastern states of Connecticut, Delaware, Florida, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia and Washington D.C.  In its company fact sheet, TD Bank reports having $238 billion in assets as of July 2014.

13.     Should Plaintiffs discover the identities and capacities of additional parties that are liable under the claims set forth herein, Plaintiffs will seek leave of Court to amend this Complaint to add these parties as additional defendants.

**FACTUAL BACKGROUND**

**A.**            **General Background on Overdraft Fees**

14.     Banks historically earned income from the differential in interest paid to account holders and what the banks were able to earn on the account holders' funds.  However that model

has changed.  With historically low interest rates, the banks have turned increasingly to consumer fees for income.  The greatest contributor to the new income model for the banks are assessing and collecting overdraft fees.  That has shifted the burden of subsidizing the bank's earnings from high asset customers to the most vulnerable customers – largely young consumers and lower-income consumers – who have the lowest amount of assets, carry small balances living from paycheck to paycheck, and are least able to absorb the financial loss of being assessed significant overdraft fees.

15.     It is estimated that in 2013, banks collected more than $31 billion in overdraft fees.  According to The PEW Center on the States research, just slightly less than 20% of customers incur at least one overdraft fee each year.  Over 90% of these consumers said they overdrew their account by mistake, and 75% of those who overdrafted their account would have rather the bank decline their transaction rather than authorize it into overdraft and charge a large overdraft fee.

**B.**          **About TD Bank**

16.     TD Bank, N.A., is a subsidiary of Toronto-Dominion Bank of Canada and a U.S. nationally chartered bank.  Prior to the year 2000, TD Bank did not have branches in the United States.  Since 2000, TD Bank has undergone an aggressive expansion into the U.S. consumer market by acquiring other banks and converting those customers to the TD Bank system.  By assets, TD Bank is now ranked in the top 10 of U.S. Banks, providing banking services to its 6.5 million east coast customers extending from Maine to Florida through its 1,300 branches and 1,900 ATM machines.

17.     A checking account is one of the main financial products that TD Bank offers to its banking customers.  One of the benefits TD Bank offers with a checking account is a debit

card that can be used for a variety of transactions including buying goods and paying for services and can also be used to make ATM and branch cash withdrawals.

C.        **TD Bank's Overdraft Practices**

18.        Almost all of the major banks allow customers to overdraw their account up to a certain level and then assess an overdraft fee for each transaction that is posted when the account is negative.  Most of the major banks engage in reordering transactions from their chronological order to high-to-low in order to increase the number of transactions that cause the bank to assess large overdraft fees.  The way high-to-low increases overdraft fees versus chronological order to the consumer is illustrated by the following example where under chronological posting, the customer would have received one overdraft fee of $35, but with high-to-low posting, the customer received two overdraft fees of $35 ($70):

| | Chronological Order | Balance | Overdraft Fee |
|---|---|---|---|
| Beginning Bal. | | $10.00 | |
| Starbucks at 9:00 a.m. | $3.50 | $6.50 | $0 |
| Target at 12:30 p.m. | $12.00 | -$5.50 | $35 |
| Total Fees | | | $35 |
| | High to Low Order | Balance | Overdraft Fee |
| Beginning Bal. | | $10.00 | |
| Target at 12:30 p.m. | $12.00 | $-2.00 | $35 |
| Starbucks at 9:00 a.m. | $3.50 | -$5.50 | $35 |
| Total Fees | | | $70 |

TD Bank engages in high-to-low posting.  This practice was the subject of lawsuits against TD Bank.  In connection with settling those lawsuits, TD Bank agreed to re-pay its customers $62

million (representing a fraction of the total amount it collected from high-to-low posting) and provide additional disclosures.  However, it did not change its practice of high-to-low posting. While Plaintiffs are not bringing a claim based on its high-to-low posting practice, TD Bank's practice of high-to-low posting is relevant to illustrating its overdraft practices, which includes the disputed practice of charging overdraft fees when there is money in the account.

19.     Most of the major banks have expensive overdraft fees of at least $32 per transaction that have no relation to the risk of non-payment or the amount of the overdraft.  TD Bank's overdraft fee is $35 per posted transaction.  An overdraft of $5.50 incurs the same fee of $35 (over 500% penalty), than an overdraft transaction of $500 receives (7% penalty).  The risk of the bank not recovering the amount that it advances for overdraft transactions has historically been extremely low.

20.     However, TD Bank has gone beyond those aggressive and harmful overdraft practices.  The overdraft practice at issue here is one that only a few major banks engage in, and is one of the most aggressive overdraft policies utilized by banks.  While most major banks, including Wells Fargo Bank, J.P. Morgan Chase, Bank of America, and Citibank, determine whether an account is overdrawn by considering whether the posted transaction will exceed the money in the account (ledger or actual balance), TD Bank deviates from this standard practice. TD Bank uses an internal "available balance" figure instead of the actual balance in determining whether a transaction is overdrawn.  Available balance is the money in the account less transactions that TD Bank anticipates will or could occur sometime in the future.  Since the available balance will always be equal to or lower than the actual balance, it has an important effect of increasing the number of overdraft fees assessed to the consumer when they make a mistake and overdraw their account.

21.     The effect of using the available balance instead of actual balance is significant. By using the available balance instead of the amount of actual money in the account (also known as the "ledger balance"), approximately 10-20% of the time that TD Bank is assessing overdraft fees, it is doing so on transactions when there is actual money in the account to cover the transaction.  In other words, it is calling a transaction that is not overdrawn an overdraft transaction for the purpose of assessing and collecting $35 from the customer.  As TD Bank assesses and collects hundreds of millions of dollars in overdraft fees from its customers through this practice, it provides itself with a windfall to the detriment of its customers.

22.     While this overdraft practice is intrinsically unfair, Plaintiffs challenge is that this practice conflicts with and thus breaches TD Bank's contracts with its customers relating to how it assesses overdraft fees.

**D.        TD Bank's Contracts Relating to Overdraft Fees**

23.     TD Bank has at least two contracts with customers relating to overdraft fees. There is a contract specifically authorizing TD Bank to charge overdraft fees on debit cards and ATM transactions if the customer signs an opt-in agreement, which for TD Bank is called "TD Debit Advance".  Regulation E requires TD Bank to obtain the customers agreement to opt-in, or else TD Bank is forbidden from charging overdraft fees on non-recurring debit card charges and ATM charges.  This is a contract of adhesion drafted by TD Bank.  In the TD Debit Advance contract, TD Bank describes that an overdraft occurs when there is not enough money in the account:

> An <u>overdraft</u> occurs **when you do not have enough money available in your account to cover a transaction** but we pay it anyway…We will charge you a $35 fee each time we pay an overdraft, up to 5 overdraft fees per day…**if your negative balance** exceeds $5 at the end of the day, we will charge you for each transaction that overdraws your account.

(TD Debit Card Advance Agreement, Ex. 1 (Emphasis added).)

The use of the term "money" instead of "available balance", makes clear to a reasonable consumer that this section refers to the actual balance – not a balance that factors in future transactions that may or may not occur.

24.     The second contract is the 2011 PDAA, which is a contract that covers the general relationship between the customer and TD Bank.  This contract is a contract of adhesion drafted by TD Bank.  The PDAA contains a section that specifically addresses what constitutes an overdraft in a section specifically entitled "Overdrafts" that defines an overdraft as an advance of funds by TD Bank:

> An overdraft is an **advance of funds** greater than the amount that has become available in accordance with the Bank's Fund Availability Policy[2]…Overdrafts may include advances to cover a check, in-person withdrawal, ATM withdrawal, or a withdrawal by other electronic means from your Account.

(2011 PDAA, Ex. 2, p. 14 (Emphasis added).)

25.     The PDAA has another section entitled "Processing Order of Payment of Checks and Other Items".  While this section appears to be dealing with the order TD Bank processes transactions, it contains language that suggest pending charges are deducted from available balance and could influence the amount available to pay other items (2011 PDAA, p.11-12).  However, that same section states that "overdraft fees may be assessed on items presented for payment that bring your Account into a **negative balance**." (2011 PDAA, Ex. 2, p. 13 (Emphasis added)).  Throughout the PDAA, when the term "balance" is used without being proceeded by

---

[2] "Funds Availability Policy" refers to when deposits clear in order to be able to access deposited funds.  It does not have anything to do with pending debit card or ATM charges. (2011 PDAA, Ex. 2, p. 27)

"available", it refers to the actual or ledger balance[3].  In contrast, in this same section, when referring to "available balance" rather than ledger balance, TD Bank uses the term "available balance" or "available account balance" (2011 PDAA, Ex. 2, pp. 12-14).  Finally, this section goes on to state that "**Overdraft fees are not charged on 'pending' authorizations**, although they reduce your available balance" (2011 PDAA, Ex. 2, p. 13 (Emphasis added)).  Taking this section as a whole, TD Bank has promised, under the terms it drafted and presented without negotiation to Plaintiffs and the putative class, that it would assess overdraft fees only when there is a negative actual or ledger balance.

26.     Taking the PDAA as a whole, Plaintiffs and the putative class have contracted with TD Bank to allow it to assess overdraft fees when it advances funds to pay for a transaction because the customer does not have enough money in the account to cover the transaction (negative balance).  However, in reality, TD Bank implements an overdraft program that assesses overdraft fees even when it does not advance funds and there is a positive balance in to the account when the "available balance" is negative.  This overdraft practice is a breach of the PDAA contract.

27.     Specifically relating to non-recurring debit card and ATM transactions, Plaintiffs and the putative class have contracted with TD Bank through the TD Debit Card Advance agreement, that TD Bank is allowed to assess them overdraft fees when there is not enough money in the account (a negative balance), but in reality TD Bank implements an overdraft program that assesses overdraft fees even when there is a positive balance in the account as there

---

[3] *E.g.,* "Minimum balance" for purposes of determining interest refers to the ledger balance (2011 PDAA, Ex. 2, p.16); "Accounts with zero balance" may be closed after 45 days refers to the ledger balance (2011 PDAA, Ex. 2, p.22); Balance Tier Structure refers to ledger balance (2011 PDAA, Ex. 2, p.24); Interest Payment on daily balances refers to ledger balance (2011 PDAA, Ex. 2, p. 26)

is money in the account sufficient to cover the transaction.  Thus, this overdraft practice is also a breach of the TD Debit Card Advance contract for non-recurring debit card and ATM transactions.

**E.**          **Aggravating Circumstance of TD Bank's Breach of Contract**

28.      TD Bank's breach of its customer agreements by engaging in this overdraft practice is particularly egregious and detrimental in light of additional factors that exist in this case.

29.      First, TD Bank has been aware that this practice is illegal when combined with its contractual provisions since 2012, as this practice has already been in the subject of previous litigation and a Court ruling:

> In one example, Plaintiffs allege that TD Bank charged [one Plaintiff] two overdraft fees on May 13, 2011, yet the account displayed a positive balance.  Plaintiffs assert that "TD Bank deducted pending transactions on subsequent days without reflecting those transactions on [the Plaintiff's] statement.  Neither the parties nor the PDAA adequately explains how overdraft fees could accrue with a positive balance.

*Hughes v. TD Bank, N.A.*, 856 F.Supp.2d 673, 677 (D.N.J. 2012).

However, despite this indication by a U.S. Federal Court that this practice is not permitted under TD Bank's customer account agreement, TD Bank has intentionally and willfully continued to utilize the same practice and use the same contract language, indicating that it is intentionally deceiving its customers and breaching its contract with customers.

30.      Second, not only does TD Bank fail to accurately and truthfully describe this overdraft practice with the terms of the customer agreements, it misrepresents what it actually does in these agreements by stating that the bank will only charge overdraft fees when there is not enough money in the account requiring the bank to advance funds to cover the transactions.

31.     Third, TD bank goes even further by concealing this overdraft practice in the monthly statements and online account tools provided to customers.  It does this with statements by listing in separate sections the deposits, debit transactions, fees and balance information, (Example Statement, Ex. 3), and then assessing the overdraft fee on a different day than the date of the supposed overdraft making it very difficult for the customer to figure out first that he or she is being charged an overdraft when there is money in the account, and even if the customer does somehow make that connection, to figure out why he or she is being charged fees for transactions for which there is sufficient money in the account to cover that transaction.

32.     Finally, TD Bank's overdraft practice, in conjunction with its misrepresentations in the account agreements and concealing of material information in the statements and online tools, results in additional and consequential overdraft fees.  This is because the assessment of the overdraft fees itself further and immediately reduces the available balance so that subsequently posted transactions are more likely to be deemed overdrafts – in other words the assessment of improper overdraft fees make later non-overdraft transactions under either actual or available balance into overdraft transaction.

33.     Therefore, Plaintiffs, on behalf of themselves and all others similarly situated, seek relief as fully set forth below.

## <u>UNLAWFUL OVERDRAFT FEES</u>

**A.**          <u>**New Jersey Plaintiff Frederick Klein**</u>

34.     TD Bank's contracts with Plaintiff Frederick Klein provided that it could only assess overdraft fees on Plaintiff Klein's account when it had advanced funds to cover a transaction because there was not money in the account to cover the transaction (negative balance).  Accordingly, TD Bank could not assess and collect overdraft fees on transactions

when there was money in the account (positive balance).

35.     However, TD Bank assessed and collected from Plaintiff Frederick Klein overdraft fees for transactions in which there was money in the account to cover the transaction (positive balance).  For example, Plaintiff's ending balance on July 15, 2014 was $15.26 following three debit transactions, and his account balance had not gone into negative at any time on July 15 or 16, 2014.  .  However, despite the fact that there was money in the account and a positive balance to cover the transactions, and TD Bank did not have to advance any funds for the transactions, on July 16, 2014, TD Bank assessed and collected $35 in overdraft fees  relating to one of the one transaction that was posted on July 15, 2014.

**B.**          **Florida Plaintiff Ronald Ryan**

36.     TD Bank's contracts with Plaintiff Ronald Ryan provided that it could only assess overdraft fees on Plaintiff Ryan's account when it had advanced funds to cover a transaction because there was not money in the account to cover the transaction (negative balance). Accordingly, TD Bank could not assess and collect overdraft fees on transactions when there was money in the account (positive balance).

37.     However, TD Bank assessed and collected from Plaintiff Ronald Ryan overdraft fees for transactions in which there was money in the account to cover the transaction (positive balance).  For example, Plaintiff's beginning balance on September 21, 2012 was $123.60.  On September 21, 2012, three transactions ranging from $4.22, $8.02 and $100 were posted to his account, leaving a positive balance at the end of the day of $11.36.  However, despite the fact that there was money in the account and a positive balance to cover each of the transactions, and TD Bank did not have to advance any funds for the transactions, on the following business day, September 24, 2012, TD Bank assessed and collected $105 in overdraft fees for the three

transactions that posted on September 21, 2012.

**C.        North Carolina Plaintiff Geoffrey Grant**

38.     TD Bank's contracts with Plaintiff Geoffrey Grant provided that it could only assess overdraft fees on Plaintiff Geoffrey's account when it advanced funds to cover a transaction because there was not money in the account to cover the transaction (negative balance).  Accordingly, TD Bank could not assess and collect overdraft fees on transactions when there was money in the account (positive balance).

39.     However, TD Bank assessed and collected from Plaintiff Geoffrey Grant overdraft fees for transactions in which there was money in the account to cover the transaction (positive balance).  For example, Plaintiff's beginning balance on April 24, 2014 was $62.28.  Plaintiff had just one posted transaction on April 24, 2014, and that was a posted $2.35 debit card charge leaving a positive balance in his account at the end of the day of $59.93.  However, despite the fact that there was money in his account to cover the transaction, and TD Bank did not advance any funds for the transaction, on the following business day, April 25, 2014, TD Bank assessed and collected $35 in overdraft fee for the one $2.35 transaction that was posted on April 25, 2014.

**D.        New York Plaintiff Tashina Drakeford**

40.     TD Bank's contracts with Plaintiff Tashina Drakeford provided that it could only assess overdraft fees on Plaintiff Drakeford's account when it advanced funds to cover a transaction because there was not money in the account to cover the transaction (negative balance).  Accordingly, TD Bank could not assess and collect overdraft fees on transactions when there was money in the account (positive balance).

41.     For example, Plaintiff's ending balance on September 22, 2014 was $134.93

following one debit transaction, and her account balance had not gone into negative at any time

on September 22, 2014.  However, despite the fact that there was money in the account and a

positive balance to cover the transactions, and TD Bank did not have to advance any funds for

the transaction, on September 23, 2014, TD Bank assessed and collected $35 in overdraft fees

relating to the one transaction that was posted on September 22, 2014.

## CLASS ACTION ALLEGATIONS

42.     Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b) of the

Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated as

members of the following Class:

43.     **The "Nationwide Class" is composed of**: The owners of bank checking accounts

maintained through a TD Bank branch in the U.S. that paid non-released overdraft fees from

August 15, 2010 to the present, on posted transactions when there was a positive balance in their

account.  Alternatively, Plaintiffs propose the following state-specific classes:

> a.  The "New Jersey Class" is comprised of:  The owners of bank checking
>     accounts maintained through a TD Bank branch in New Jersey that paid non-
>     released overdraft fees from August 15, 2010 to the present, on posted
>     transactions when there was a positive balance in their account.
>
> b.  The "Florida Class" is comprised of:  The owners of bank checking accounts
>     maintained through a TD Bank branch in Florida that paid non-released
>     overdraft fees from August 15, 2010 to the present, on posted transactions
>     when there was a positive balance in their account.
>
> c.  The "North Carolina Class" is comprised of:  The owners of bank checking
>     accounts maintained through a TD Bank branch in North Carolina that paid

non-released overdraft fees from August 15, 2010 to the present, on posted transactions when there was a positive balance in their account.

    d.   The "New York Class" is comprised of:  The owners of bank checking accounts maintained through a TD Bank branch in New York that paid non-released overdraft fees from August 15, 2010 to the present, on posted transactions when there was a positive balance in their account.

The Nationwide Class, and alternatively, the New Jersey Class, Florida Class, North Carolina Class, and New York Class shall be collectively referred to as the "Class."

    44.    **Excluded from the Class**.  Any entity in which Defendant has a controlling interest, officers or director of Defendant, judicial officer assigned to the case, or a customer who has released all of their claims arising from overdraft fees against TD Bank.  Subject to additional information obtained through further investigation and discovery, the foregoing Class definitions may be expanded or narrowed by amendment or amended complaint.  Plaintiffs expressly reserve the right to move for class certification of different state classes and subclasses.

    45.    **Numerosity of the Class.**  The members of the Class are so numerous that a joinder of all members would be impracticable.  While the exact number of the members of the Class is unknown to Plaintiffs at this time and can be determined only by appropriate discovery, Plaintiffs believe that the Class is likely to include thousands of members.  Inasmuch as the Class members may be identified through business records regularly maintained by TD Bank and its employees and agents, and through the media, the number and identities of Class members can be ascertained.  Members of the Class can be notified of the pending action by e-mail and mail and supplemented by published notice, if necessary.

//

H0041271.

46.    **Existence and Predominance of Common Question of Fact and Law.**  There are questions of law and fact common to Plaintiffs and the Class.  These questions predominate over any questions affecting only individual Class members.  These common legal and factual issues include, but are not limited to:

1.    Whether class members had common contracts or common contract language with TD Bank;

2.    Whether the contracts with TD Bank were contracts of adhesion;

3.    Whether TD Bank had a standard overdraft policy of assessing overdraft fees on transactions with a positive actual or ledger balance and a negative available balance;

4.    Whether Defendant breached its customer agreements by assessing checking account customers overdraft fees for transactions when the account had a positive balance; and

5.    Whether Defendant's conduct violated New Jersey's Consumer Fraud Act;

47.    **Typicality.**  Plaintiffs' claims are typical of all of the members of the Class.  The evidence and the legal theories regarding Defendant's alleged wrongful conduct are identical or substantially similar to Plaintiffs and all of the Class members.

48.    **Adequacy.**  Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs have retained competent counsel experienced in class action litigation, and specifically with experience in class action litigation involving overdraft practices, to ensure such protection.  Plaintiffs and their counsel will prosecute this action vigorously.

49.    **Predominance and Superiority.**  This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the

Class predominate over the questions affecting only individual members of the Class, and a class action is superior to other available means for the fair and efficient adjudication of this dispute. Because the injury suffered by the Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiffs and Class members individually to seek redress for the alleged wrongful conduct. Even if any individual persons or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation(s) would proceed. The class action device is preferable to individual litigation(s) because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of fact and law. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent a class action, Plaintiffs and the Class members will continue to suffer losses, thereby allowing these violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

50.     Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, TD Banks' own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, Plaintiffs would contemplate the use of additional media and/or mailings.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(For Breach of Contract)**
**On Behalf of the Class**

51.      Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as those fully set forth at length herein.

52.      Plaintiffs and each of the Class members entered into a contract with TD Bank covering the subject of overdraft transactions.  As described above, Defendant's actions have violated specific terms of the account agreements with customers, including other documents referenced therein.  Defendant is liable for the losses of Plaintiffs and the Class that have resulted from Defendant's breaches of the parties' contractual agreements.

53.      Plaintiffs and the Class have performed all, or substantially all, conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

54.      As a proximate result of Defendant's breach of the contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**(Violation of N.J. Stat. Ann. §56:8-1, *et seq.*, New Jersey's Consumer Fraud Act)**
**On Behalf of the Class or, Alternatively, the New Jersey Class**

55.      Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as those fully set forth at length herein.

56.      Plaintiff Frederick Klein, who has suffered injury in fact and has lost money or property as a result of Defendant's violations of New Jersey's Consumer Fraud Act ("NJCFA"), alleges this cause of action as a class action.

57.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise…" N.J. Stat. Ann. § 56:8-2.

58.     TD Bank entered into contracts with its consumer customers in which TD Bank chose the language to bind the parties relating to the definition of "overdrafts" and the circumstances when TD Bank was authorized to assess and collect overdraft fees from customers' accounts.  TD Bank contracted with its customers so as to allow it to assess and collect overdraft fees only when the posted transaction resulted in a negative ledger or account balance.

59.     Defendant has engaged in, and continues to engage in unlawful conduct as a general business practice by breaching those contracts and misrepresenting its practices in the contracts.  Specifically, contrary to what TD Bank states is its practice in the contracts, TD Bank uniformly and as a matter of policy assesses and collects overdraft fees on posted transactions with a positive account balance.

60.     Further, TD Bank has engaged in this practice through substantially aggravating circumstances.  This includes continuing to engage in this practice even after a federal district court indicated that this practice is not permitted under the terms of the customer account agreement; the mechanism of this practice is very difficult for a consumer to figure out because of how it is concealed by the Defendant; and the practice is directed at and is especially harmful to the most vulnerable customers.  Therefore, TD Bank has had actual knowledge from the federal court since 2012 that this is an illegal practice that is in breach of the customer agreements, but has nevertheless continued to engage in this practice that has caused serious

economic harm to the Plaintiffs and the Class.  Additionally, the statements and online tools provided by TD Bank conceal material information that would allow customers to understand they are being charged overdraft fees when their account balance remains positive.  Furthermore, the overdraft practice renders customers vulnerable to being assessed an enormous amount of overdraft fees in a short period of time, as the unlawfully assessed overdraft fees  themselves further reduce the balance prior to the posting of additional transactions, rendering other non-overdraft transaction into overdraft transactions.

61.    By engaging in the above-described practice and the actions and omissions herein alleged, Defendant has committed one or more unlawful acts in violation of the NJCFA.

62.    Plaintiffs justifiably relied on Defendant's contracts, disclosures, representations, and omissions in expecting that TD Bank would implement its overdraft policy consistent with its contracts and disclosures.

63.    TD Bank intended for customers to rely on the contracts and disclosures on how it would implement its overdraft policies.

64.    Had Plaintiffs and the Class known the actual facts or legal implications of those acts, they would have avoided the overdraft fees.  Therefore, a causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiffs and the Class.

65.    By reason of the foregoing, Defendant has been improperly and unjustly enriched to the detriment of Plaintiffs and the Class in an amount to be proven at trial.  Plaintiffs and the Class are entitled to have Defendant disgorge and restore to Plaintiffs and the Class members all improperly taken monies as a result of their conduct as alleged herein.

66.    Defendant's conduct caused Plaintiffs and Class members to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiffs and the Class have suffered an

ascertainable loss in that they received less than what was promised to them by TD Bank in their account agreement and other disclosure forms.  Therefore, Plaintiffs and the Class are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

67.     As a result, Plaintiffs and the Class have suffered an ascertainable loss of monies and pursuant to NJ Stat. § 56:8-19 is entitled to threefold damages.

68.     Unless Defendant is enjoined from continuing to engage in this business practice, Plaintiffs and the Class will continue to be injured by Defendant's wrongful actions and conduct. Therefore, Plaintiffs and the Class are entitled to injunctive relief.

<div align="center">

**THIRD CAUSE OF ACTION**
**(Breach of the Duty of Good Faith and Fair Dealing)**
**On Behalf of the Nationwide Class or, Alternatively, each of the State Sub-Classes**

</div>

69.     Plaintiffs and the Nationwide Class (or, in the alternative, each of the State Sub-Classes) incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

70.     Every contract contains an implied covenant of good faith and fair dealing.

71.     TD Bank breached the covenant of good faith and fair dealing by, *inter alia*, assessing overdraft fees on transactions when there is money in the account to cover the transaction.

72.     TD Bank acted in bad faith and/or with a malicious motive to deny Plaintiffs and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

//

//

H0041271.                                              23

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

1.    For an order certifying this action as a class action;

2.    For an order appointing Plaintiffs as representatives of the Class and their counsel of record as Class counsel;

3.    For an award of actual, general, special, incidental, statutory, compensatory and consequential damages on all applicable claims and in an amount to be proven at trial;

4.    For an award of exemplary and punitive and treble damages on all applicable claims and in an amount to be proven at trial;

5.    For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

6.    For an order enjoining the wrongful conduct alleged herein;

7.    For costs;

8.    For interest;

9.    For attorneys' fees under applicable law;

10.  For such other relief as the Court deems just and proper.

//

//

//

//

//

//

//

DATED:  January 9, 2015.          By: _____

<div style="margin-left: 2em;">

**CHIMICLES & TIKELLIS LLP**
Joseph G. Sauder, (#03079-1998)
Email:  JGS@chimicles.com
Matthew D. Schelkopf,  (#03036-2002)
Email:  MDS@chimicles.com
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633

**McCuneWright LLP**
Richard D. McCune (CA #132124)*
Email: rdm@mccunewright.com
Jae (Eddie) K. Kim (CA #236805)*
Email: jkk@mccunewright.com
Michele M. Vercoski, (NJ #03101-2004)
Email: mmv@mccunewright.com
2068 Orange Tree Lane, Suite 216
Redlands, California  92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

**THE KICK LAW FIRM, APC**
Taras Kick (CA #143379)*
Email: taras@kicklawfirm.com
Thomas A. Segal (CA #222791)*
Email: thomas@kicklawfirm.com
201 Wilshire Boulevard, Suite 350
Santa Monica, California 90401
Telephone:   (310) 395-2988
Facsimile:   (310) 395-2088

*Attorneys for Plaintiffs and the Proposed Class*

*\*Pro Hac Vice Applications to be Submitted*

</div>